601 P.2d 532 (1979)
Randy L. BRITTAIN, Appellant (Plaintiff below),
v.
Roland BOOTH, d/b/a Del-Hi Construction Company, Inc., and Opha Hartsook, Appellees (Defendants Below).
No. 5098.
Supreme Court of Wyoming.
October 17, 1979.
*533 Glenn A. Hottenstein (argued), of Guy, Williams & White, Cheyenne, for appellant.
Glenn Parker (argued), James L. Applegate and Thomas G. Gorman of Hirst & Applegate, Cheyenne, for appellee Opha Hartsook.
Bard Ferrall, Cheyenne, for appellee Roland Booth, d/b/a[*] Del-Hi Construction Company, Inc.
Before RAPER, C.J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.
ROONEY, Justice.
Appellant-plaintiff appeals form a $5,100 judgment entered on a verdict in a personal injury action, in which the jury assessed his damages at $10,000 but apportioned the negligence 49 percent to him and 51 percent to appellee-defendant Hartsook.[1] Appellant contends that the verdict was inadequate and irregular; that there was no evidence to support the finding of negligence on his part; and that he was not negligent as a matter of law. Therefore, he requests a new trial on only the issue of the amount of damages.
We affirm.
On August 7, 1974, appellant, age 16, had been an employee of Hartsook Equipment and Pump Service, Inc. for about one month. Hartsook Equipment and Pump Service, Inc. had a contract to place two large gasoline tanks underground on certain premises in Green River. It subcontracted the excavation work to Roland Booth, doing business as Del-Hi Construction Company, Inc. Booth made the excavation, the sides of which were not sloped or shored, and no one tested the soil to determine if sloping or shoring was necessary to prevent a cave-in. Appellant, Booth and John Ramirez (another employee of Hartsook Equipment and Pump Service, Inc.) went into the excavation for one of the tanks to level the floor on which the tank was to be placed. After the crane arrived to place the tank, a portion of the north side of the excavation caved in, covering appellant with dirt and injuring him. At the time, the appellant was in a crouched or stooped position. The *534 dirt from the cave-in was about knee deep and covered appellant to a depth of about 6 inches. The excavation was 11 feet deep, 12 feet wide and 30 feet long. The foregoing facts are not in material controversy. Additional facts will be set out herein as necessary.
Booth was also a defendant at the trial of the case. The jury found no negligence on his part. A and A Oil Company (the party for which the tank was being installed), James Welding (crane operator), and Hartsook Equipment and Pump Service, Inc.[2] were all parties to the action at one time but were dismissed from it prior to trial. Appellee was made a defendant as a co-employee of appellant.

APPELLANT'S NEGLIGENCE
In its instructions, the trial court outlined, without objection, appellee's contentions with reference to appellant's negligence. These contentions included (1) appellant's assumption of "the risk that such an accident might occur," and (2) the fact that the cave-in "distributed earth to about knee depth of [appellant] and * * * had [appellant] not negligently squatted or crouched down with his head below his knees, he would not have been covered by the approximately six inches of earth which did in fact cover him."[3] By its verdict, the jury found appellant negligent in at least one of these fashions.
Before giving attention to whether or not there was substantial evidence to support a finding of negligence in the nature of assumption of risk, it is necessary to examine the posture of the doctrine of assumption of risk in this state. A distinction between contributory negligence and assumption of risk has not been recognized in Wyoming. Ford Motor Company v. Arguello, Wyo., 382 P.2d 886 (1963); Rocky Mountain Trucking Company v. Taylor, 79 Wyo. 461, 335 P.2d 448 (1959); Sanders v. Pitner, Wyo., 508 P.2d 602 (1973). Prior to the enactment of the comparative negligence statute in Wyoming,[4] contributory negligence, and with it assumption of risk, were absolute defenses to a negligence action. Ford Motor Company v. Arguello, supra; and Town of Douglas v. Lore, Wyo., 375 P.2d 399 (1962).
The comparative negligence statute directs apportionment of fault occasioned by contributory negligence which is "not as great as the negligence of the person against whom recovery is sought." Since, in Wyoming, assumption of risk has been held to be a form of contributory negligence, the obvious legislative intent was to include it within the apportionment. All statutes are presumed to be enacted with full knowledge of the existing state of the law with reference thereto. DeHerrera v. Herrera, Wyo., 565 P.2d 479 (1977); Matter of Adoption of Voss, Wyo., 550 P.2d 481 (1976); Civic Ass'n of Wyoming v. Railway Motor Fuels, 57 Wyo. 213, 116 P.2d 236 (1941). Accordingly, assumption of risk, as a form of contributory negligence is not an absolute defense to a negligence action, but is a basis for apportionment of fault.
*535 In this respect, it should be noted that assumption of risk as a form of contributory negligence must not be confused with an agreement to hold one blameless or harmless for damages resulting from his negligence or other conduct. Such an agreement may be enforced if it is not contrary to public policy. See Blackburn v. Dorta, Fla., 348 So.2d 287 (1977); Lyons v. Redding Construction Company, 83 Wash.2d 86, 515 P.2d 821 (1973); Wilson v. Gordon, Me., 354 A.2d 398 (1976); Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826 (1971); Gilson v. Drees Brothers, 19 Wis.2d 252, 120 N.W.2d 63 (1963).
Turning then to a consideration of the sufficiency of the evidence in this case to support the finding of negligence on the part of the appellant, we note that under the oft-repeated standard under which such is done, we must assume the evidence in favor of the prevailing party as true and leave out of consideration the evidence in conflict therewith, giving to the evidence in favor of the prevailing party every favorable inference which may be reasonably and fairly drawn from it; and we are not to evaluate the evidence, rather we are to determine only if there was substantial evidence upon which the jury could arrive at its decision if it believed the evidence in favor of the prevailing party. Brasel and Sims Construction Co. v. Neuman Transit Co., Wyo., 378 P.2d 501 (1963); Fisher v. Robbins, 78 Wyo. 50, 319 P.2d 116 (1957); Ford Motor Company v. Arguello, supra; Potts v. Brown, Wyo., 452 P.2d 975 (1969).
In applying this standard to the question of whether or not a reasonable person of ordinary prudence would have entered the excavation in the face of the risk of a cave-in, we find evidence from witness Hollingsworth that the excavation was subject to cave-in and should have been either shored or sloped to prevent a cave-in. Occupation Health and Safety Agency regulations were introduced into evidence and were included in the instructions to the jury, which reflect the potential for cave-ins in such excavations, the necessity for sloping or shoring to prevent them, and the danger to persons in the excavations if such is not done. The testimony was that the regulations were applicable only to those excavations in which a worker was to enter. Booth and appellee each testified that they would have sloped the sides of the excavation if they had known a person was to enter it. Booth testified that he had twenty years of experience with excavations, and that all excavations are hazards. Appellant testified that he noticed the composition of the soil. He called it shaley. He was at the worksite and observed the excavating process. He had worked in at least one other excavation. He testified that he was not ordered into the excavation by appellee or by anyone else, and that "we [he and Ramirez] just discussed what needed to be done and we went and done it." The evidence reflected that the excavation was 11 feet deep, 12 feet wide and 30 feet long, with vertical sides (not sloped) and without any shoring. It reflected the soil to be sandy.
There was substantial evidence from which a jury could find the existence of a risk or danger to one entering this excavation, and from which it could find that a reasonable man of ordinary prudence would not take the risk or subject himself to the danger. And this is the test by which appellant's act is to be measured. The test is not that which Ramirez or Booth or appellee or any other specific person would do or did do.
Nor can it be contended that appellant cannot be held negligent because he did not comprehend or recognize the danger. Such failure in itself could constitute negligence. We have said that a "reasonable" person is one
"* * * exercising those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. [Citation.]" Johnston v. Vukelic, 67 Wyo. 1, 18, 213 P.2d 925, 930 (1950).
The jury could conclude that failure to recognize the potential for danger *536 and injury in entering an excavation 11 feet deep and 12 feet wide in sandy or shaley soil with vertical unsloped and unshored sides is an act which a reasonable person of ordinary prudence would not do. The jury could premise such a conclusion on a recognition that the sides of such an excavation can, and do, cave in at times inasmuch as such recognition is within man's common fund of knowledge and experience. A jury may apply its own knowledge of matters within man's common fund of knowledge and experience to the issues before it. Casper Lodge No. 22, I.O.O.F. v. Corbridge, 74 Wyo. 244, 286 P.2d 1047, 1056 (1955); and Brown v. State, 80 Wyo. 12, 336 P.2d 794 (1959).
Since there was substantial evidence from which the jury could find negligence in this respect on the part of appellant, we cannot disturb the finding. This conclusion makes unnecessary a consideration of the crouching of appellant as a basis for a finding of negligence.

ADEQUACY AND REGULARITY OF THE VERDICT
The jury's determination of the amount of damages is inviolate absent an award which is so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause had invaded the trial. Lane v. Gorman, 10th Cir., 347 F.2d 332 (1965); Fitzsimonds v. Cogswell, Wyo., 405 P.2d 785 (1965); Pan American Petroleum Corporation v. Like, Wyo., 381 P.2d 70 (1963).
Appellant points to testimony that he had a 35 to 40 percent permanent disability of the body as a whole as a result of the injury; to testimony that the injury necessitated the fusion of four vertebrae in his lower back and the probability of further surgery; to testimony relative to severe pain and suffering attendant to the injury and to the treatment of it; and to testimony of payment of $7,800 for medical expenses incurred as a result of the injury. From these things, he asks us to conclude that the award was inadequate.
We repeat that which we said in Oroz v. Hayes, Wyo., 598 P.2d 432, 434 (1979):
"All of these things were presented to, and considered by, the jury. Appellant does not refer to any evidence of passion or prejudice on the part of the jury. He does not refer to any other improper action or persuasion which invaded the trial. He does not point to an inconsistency or conflict in, or resulting from, the award itself. He does not indicate a failure on the part of the jury to follow instructions. He simply contends that the award was too small. Such, without more, is insufficient for reversal on appeal. Ries v. Cheyenne Cab & Transfer Company, 53 Wyo. 104, 79 P.2d 468 (1938); and Valdez v. Glenn, 79 Wyo. 53, 330 P.2d 309, reh. den. 79 Wyo. 53, 64, 332 P.2d 1119 (1958).
"`As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more.' 22 Am.Jur.2d Damages § 398."
The trial judge and jury heard all of the evidence. There was considerable evidence relative to appellant's employment and income since receiving the injury and relative to his activities and marriage subsequent to the injury.
The jury fixed the amount of the award. Appellant presented his contentions concerning the inadequacy of it to the trial *537 judge in briefs and in argument on his motion for a new trial. In denying the motion, the trial judge found that
"* * * the verdict which was returned by the jury at the conclusion of the Trial of this matter was a conclusion to which honest jurors, acting fairly and intelligently in the light of their experience and knowledge of human affairs, might come * * *."
The court rendered judgment in the verdict. We find no reason to disturb it.
Affirmed.
ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.
I dissent because I find no evidence of negligence assignable to this inexperienced sixteen-year-old appellant which would support the verdict and judgment finding him guilty of contributory negligence.
An inexperienced young man, without warning of danger, entered the excavation at the direction of his supervisory employer[1], and when the cave-in occurred, he squatted down. This, for me, is not evidence that the boy knew, should have known or appreciated the danger of cave-in. Where is the evidence and the law that tells us that what this boy did constitutes negligence? Assumption of the risk and contributory negligence are affirmative defenses with the burden of proof on the defendant, Anderson v. Schulz, Wyo., 527 P.2d 151, 153 (1974), a burden which I find the defendant failed to discharge.
In Carney Coal Company v. Benedict, 22 Wyo. 362, 140 P. 1013 (1914), citing Sidwell v. Economy Coal Co., Iowa, 130 N.W. 729, we said:
"... In personal injury actions, whether the defendant has been negligent as alleged or whether plaintiff has been guilty of contributory negligence are, as has often been said, peculiarly questions of fact to be submitted to the jury, `unless the testimony is without conflict and is of such character as to afford no opportunity for fair-minded men to differ upon the conclusion to be reached thereon.' ..." [Emphasis supplied] 140 P. at 1015.
I suggest that this case comes within the exception of the above rule because it was the defendant's burden to prove that plaintiff (a) knew and appreciated the danger attendant upon his entering the excavation, and the record contains no such proof, or (b) that the danger was obvious and apparent  a fact which could not be proven, particularly in the face of the showing that the danger was not obvious and apparent to the defendant supervisor and his more experienced fellow workers.
The majority observes that appellee only contends for the following:
"... (1) appellant's assumption of `the risk that such an accident might occur,' and (2) the fact that the cave-in `distributed earth to about knee depth of * * * [appellant] and * * * had * * * [appellant] not negligently squatted or crouched down with his head below his knees, he would not have been covered by the approximately six inches of earth which did in fact cover him.'",
and then concludes:
"By its verdict, the jury found appellant negligent in at least one of these fashions."

Assumption of the Risk
As the majority points out, this court has, on various occasions, held that we do not recognize a distinction between assumption of the risk and contributory negligence. Ford Motor Co. v. Arguello, Wyo., 382 P.2d 886 (1963); Rocky Mountain Trucking Co. v. Taylor, 79 Wyo. 461, 335 P.2d 448 (1959); and Sanders v. Pitner, Wyo., 508 P.2d 602 *538 (1973). Even so, by speaking of assumption of the risk in the contentions instruction, the court and the parties had reference to the alleged contributory negligence attendant upon the boy's entering the excavation and thus assuming the risk of whatever danger was associated with such conduct. But I see no proven contributory negligence on the appellant's part in this respect.
The appellant, when injured, was sixteen years old; he had worked for the Hartsook Company one month before the accident and his experience was limited to work on two excavations before this one. According to the record, appellant-Brittain knew nothing about sloping the hole for safety purposes. He did not see any cracks or sloughing of the walls when he went in the excavation; and even though he knew the soil was shaley, there is no proof, and no inference can be drawn, that this knowledge either alerted him to danger, should have alerted him to danger, or, with his limited experience in the business, that it should have caused him to appreciate danger. The evidence is that no soil tests had been made prior to the excavation, and appellant had received no warning of danger from any source.
When the cave-in took place, Brittain was covered and Ramirez and Booth, fellow workers, uncovered him and brought his head up so he could breathe.
On the morning of the accident, Hartsook came by and said to one Ramirez, an experienced fellow worker who had been with the company five years,
"We have to level these holes, they are a little bit off. It has to be done."
The majority says that appellant testified that he was not ordered into the hole by anyone. I cannot accept this conclusion. The precise testimony of appellant was:
"I specifically heard Opha Hartsook come by and in passing say, `We have to level these holes, they are a little bit off. It has to be done.'
"Opha never gives out a direct order, you know. He never says pick that shovel up and do these things, he says it in a way where everybody understands, you know, that has to be done and who does it, you know."
Ramirez then said to the appellant, "Come on Randy, let's go level the hole." I conclude that these directions constituted a work order from plaintiff's supervisors that he enter the hole. The appellant, relying on Hartsook's and Ramirez' orders and experience, did enter the excavation, and, while engaged in the leveling operation, felt a great force pushing him down. The cave-in had happened.
The majority relates the following to bring it to the conclusion that there was evidence from which the jury could conclude the appellant was guilty of contributory negligence:
"... [W]e find evidence from witness Hollingsworth that the excavation was subject to cave-in and should have been either shored or sloped to prevent a cave-in. Occupation Health and Safety Agency regulations were introduced into evidence and were included in the instructions to the jury, which reflect the potential for cave-ins in such excavations, the necessity for sloping or shoring to prevent them, and the danger to persons in the excavations if such is not done. The testimony was that the regulations were applicable only to those excavations in which a worker was to enter. Booth and appellee each testified that they would have sloped the sides of the excavation if they had known a person was to enter it. Booth testified that he had twenty years of experience with excavations, and that all excavations are hazards. Appellant testified that he noticed the composition of the soil. He called it shaley. He was at the worksite and observed the excavating process . . The evidence reflected that the excavation was 11 feet deep, 12 feet wide and 30 feet long, with vertical sides (not sloped) and without any shoring. It reflected the soil to be sandy."
Except for the reference to shaley soil, these facts speak to the negligence of the employer  not the appellant-employee.
*539 The majority then cites the familiar appellate rules about assuming the evidence of the prevailing party to be true  leaving out of consideration evidence in conflict therewith and giving to the evidence of the successful party every favorable inference that can be drawn from it. I, of course, recognize the applicability of and have no problem with these rules. Particularly do I agree with the majority when it says that we may not evaluate the evidence and that we must determine only if there was substantial evidence upon which the jury could arrive at its decision if it believed the evidence in favor of the prevailing party. Brasel & Sims Const. Co. v. Neuman Transit Co., Wyo., 378 P.2d 501 (1963); Fisher v. Robbins, 78 Wyo. 50, 319 P.2d 116 (1957); Ford Motor Co. v. Arguello, supra; and Potts v. Brown, Wyo., 452 P.2d 975 (1969).
My position here is that, according to the facts and the applicable law of this case, there was no substantial relevant evidence upon which the jury could arrive at the decision that this plaintiff was contributorily negligent and that his negligence was one of the causes of his injury.
First off, it is worthy of observation that this court has not been particularly hospitable to employers' efforts to visit cost of their negligence on employee victims by invocation of the assumption-of-risk doctrine. As we said in Rocky Mountain Trucking Company v. Taylor, 79 Wyo. 461, 474, 335 P.2d 448, 451 (1959):
"... We content ourselves by saying that the acceptance by a worker of employment in such an extrahazardous employment as that entailed in oil-field work does not serve to exonerate an employer from liability for negligent acts, whether such acts be those of the employer or of the employer's servant. This, we think, adversely disposes of the assumption of risk defense."
Surely, "the acceptance by a worker of employment" must include the situation in the case at bar in which a worker obeys an order within the obvious scope of his employment and in which the employer indisputably has more knowledge and control of the safety factors than does the employee.
With respect to whether the plaintiff in this case may be charged with negligence in entering the excavation, I concede at the outset that he is bound by what he did know, should have known, or might have known had he exercised ordinary care regarding the possible dangerous condition of the excavation. However, the kind of danger and knowledge of danger that will defeat recovery must be such as would cause an ordinarily prudent person with the age and experience of the plaintiff to appreciate the risk. See, Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350 (1927). Even knowledge of some danger will not constitute contributory negligence if the appreciation factor is not present. We said in Loney, supra:
"But knowledge or imputed knowledge of danger that will bar recovery does not necessarily arise from mere knowledge of a defective condition, by reason of which a man may be injured. Danger may lurk within every defective condition, and yet may not be of such character that men of ordinary prudence would hesitate to expose themselves thereto. The defect and the danger therefrom must be such that knowledge, or imputed knowledge thereof, would cause an ordinarily prudent person to appreciate the risk therefrom. Louisville G. & E. Co. v. Beaucond, 188 Ky. 725, 224 S.W. 179. In the case of Frost v. McCarthy, 200 Mass. 445, 86 N.E. 918, it was said:
"`The principle is too well settled to require a citation of authorities to support it, that mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk.'" 255 P. at 353-354.
We said in Boatman v. Miles, 27 Wyo. 481, 199 P. 933, 935 (1921), with respect to the nature of the risk that will impose upon an employee-plaintiff the onus of contributory negligence:
"... [W]e may state generally that a servant assumes (1) such dangers *540 as are ordinarily and normally incident to his occupation, and a workman of mature years is presumed to know them, whether he does or not; (2) such extraordinary or abnormal risks which he (a) knows and appreciates and faces without complaint, or which (b) are obvious or apparent...."
Concerning the first class of dangers and risks mentioned in the Boatman opinion, this is just another way of concluding that the master is not negligent. We explained this in Boatman when we said that ordinary risks are those that remain after the master has done everything he is bound to do with respect to securing the safety of his servants. That is not the situation here. In this case the master, because of his years in the business and his experience, knew, or is chargeable with knowledge, of the danger attendant upon entering an excavation which has not been sloped and with respect to which other safety precautions have not been taken. He ordered his employees to undertake a dangerous piece of work without taking precaution for their safety and without warning them of the danger. The jury, therefore, properly found him negligent upon adequate supporting evidence.
The kind of risk with which we are here involved must, therefore, fall within category (2) of the Boatman opinion  namely, it must have been an extraordinary risk. The question then becomes this: What constitutes contributory negligence by a servant when the master negligently exposes him to an extraordinary risk in the workplace? We have said that a master who keeps an unsafe place to work keeps an extraordinary risk  one that is outside the pale of ordinary danger. Boatman, supra. The servant does not assume the consequence of such risks unless he knows of them  appreciates them and faces them without complaint or  unless they are obvious and apparent. Boatman, supra.
In this case, there is no evidence to show that the danger was obvious  either to this plaintiff, more experienced employees or, presumably, the employer (since he ordered his men into the excavation). However, the evidence is clear that the work was of a dangerous character  and there is no evidence that plaintiff knew of the danger, or if he did that he appreciated the danger, and no law to indicate that (given these or similar facts) he is chargeable with knowing of the danger and appreciation of the risk.
Where an extraordinary risk in the workplace is involved, the proof spectrum looks like this:
"... When it appears to be clear that the servant had knowledge of, and appreciated the danger, or that the danger was so obvious or apparent that knowledge should be imputed to him, then the court may declare as a matter of law that the servant is not entitled to recover, as was done in the following cases ... (citations). If, on the other hand, there is a conflict in the evidence, or different inferences may be drawn therefrom, the question of knowledge is for the jury. (citations)" [Emphasis supplied] Boatman, supra, 199 P. at 936.
When there is no evidence that the danger was obvious or that the worker possessed knowledge and/or appreciation of danger,
"`[a] court is not authorized to say as a matter of law that the danger was obvious unless it is shown by the evidence without conflict that an ordinarily prudent man or one with the experience of the injured servant ought to have noticed it.'" Boatman, supra, quoting Carney Coal Co., supra.
Another way to say this is  where there is no evidence that the danger is obvious or that the plaintiff had knowledge of or appreciated the danger  or that, in the circumstances he is chargeable with such knowledge and appreciation  then the court must say, as a matter of law, that contributory negligence has not been proven. That is what I would have held in this case. The reason is that there is no evidence in this record, with or without conflict, which shows that an ordinarily prudent man with the plaintiff's experience (or lack of it) ought to have noticed and appreciated the danger that this ditch might cave in. The fact that experienced workers *541 went into the excavation without hesitation, the fact that the employer did not see the danger as obvious since he sent his personnel into the ditch, and all of the other attendant circumstances, support this conclusion. If there is no such evidence of knowledge and/or appreciation of danger, and no legal obligation, under the facts, to know of and/or appreciate the danger, then it cannot be said there is substantial evidence of contributory negligence which will support a negligence verdict against the plaintiff. Substantial evidence means relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737, 740 (1950). A judgment which is unsupported by the evidence may not stand. Barber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723 (1959).
Since I find no other facts of record which could conceivably support a finding of negligence on the part of the plaintiff, I would have reversed that part of the judgment which sets off the plaintiff's percentage of negligence against that of the defendant and would have ordered the district court to award to the plaintiff all of the damages found by the jury.
NOTES
[*] Appellee Booth did not file a brief or present oral argument (see footnote 1 of opinion).
[1] Appeal was taken against both defendants Booth and Hartsook, but appellant advised counsel for appellee Booth prior to oral argument, and he advised the court at oral argument, that he was not claiming any relief against appellee Booth. Appellee Booth did not present briefs or oral argument. Appellee Hartsook will be referred to as "appellee" herein.
[2] Appellant's injury occurred between the time of the decision in Markle v. Williamson, Wyo., 518 P.2d 621 (1974), which held that an employee was not immune from suit by a co-employee for negligence while both were in the scope of employment, and the time of the passage of § 27-12-103, W.S. 1977, which exempts co-employees from such liability unless negligence is culpable. The status of appellant under workmen's compensation was not before the court or jury.
[3] Considerable evidence was presented and much argument made concerning the exact position of appellant in the excavation at the time of the cave-in, and whether or not he was then near or leaning on the side of the excavation, but the court made no reference to such in its instructions as a contention by appellee of direct negligence on the part of appellant.
[4] Section 1-1-109, W.S. 1977, provides:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering."
[1] Opha Hartsook, in his answer, admits that he was at the scene of the accident as an employee of Hartsook Equipment Company, as well as in his capacity at the same time as President and majority stockholder of the company. He admits he was normally the supervisor of the plaintiff, Randy L. Brittain, but denies that at the time of the accident he was in the course of supervising the activities of the plaintiff. This opinion assumes that Hartsook was Brittain's master  i.e., his supervisory employer.