2009 WY 64

**Theresa PIÑA and Juan Piña, Appellants (Plaintiffs),**

v.

**L. Charles CHRISTENSEN, M.D., Appellee (Defendant).**

No. S–07–0295.

Supreme Court of Wyoming.

May 13, 2009.

Representing Appellant: James E. Fitzgerald of The Fitzgerald Law Firm, Cheyenne, Wyoming.

Representing Appellee: Scott P. Klosterman of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Theresa and Juan Piña brought an action against Dr. Charles Christensen for medical malpractice. After a jury trial, the jury found no negligence on the part of Dr. Christensen. The Piñas appeal, arguing the jury instructions misled the jury as to the appropriate standard of care. Finding no error in the jury instructions, we affirm.

## ISSUE

[¶ 2] The Piñas present the issue in this case as whether the trial court prejudicially erred when it instructed the jury: "Before you may find that [Dr. Christensen] was negligent in his care and treatment of [Mrs. Piña], you must first find, by a preponderance of the evidence, that he failed to act in accordance with the standard of care adhered to by the American Board of Urology."

## FACTS

[¶ 3] Only minimal facts need be set out for context. Dr. Christensen is a urologist certified by the American Board of Urology. Dr. Christensen operated on Mrs. Piña to repair her mild urinary incontinence. Complications arose, and Mrs. Piña now suffers from severe urinary incontinence.

[¶ 4] The Piñas claim Dr. Christensen was negligent in several respects. The jury trial essentially became a battle of experts. In the end, the jury found Dr. Christensen not negligent. Further facts will be developed as necessary below.

## DISCUSSION

### General Law

[¶ 5] The function of jury instructions is to give the jury guidance with respect to the applicable law. Instructions are sufficient if they correctly state the law, they are not misleading, and they permit the parties to argue their respective theories of the case. Instructions must not be extracted piecemeal to establish error, but rather are

reviewed in their entirety. *Hannifan v. American Nat'l Bank of Cheyenne,* 2008 WY 65, ¶ 23, 185 P.3d 679, 689 (Wyo.2008); *Three Way, Inc. v. Burton Enterprises, Inc.,* 2008 WY 18, ¶ 23, 177 P.3d 219, 227 (Wyo.2008).

[¶ 6] We review the legal sufficiency of jury instructions de novo, asking first whether an instruction is erroneous, and second whether the error prejudiced a party. Prejudice is not presumed. *Sellers v. Dooley Oil Transport,* 2001 WY 44, ¶ 9, 22 P.3d 307, 309 (Wyo.2001); *Cervelli v. Graves,* 661 P.2d 1032, 1036 (Wyo.1983). The burden is on the appellant to show prejudicial error. *Parrish v. Groathouse Const., Inc.,* 2006 WY 33, ¶ 7, 130 P.3d 502, 505 (Wyo.2006); *Daley v. Wenzel,* 2001 WY 80, ¶ 29, 30 P.3d 547, 554–55 (Wyo.2001).

[¶ 7] In general, this Court has stated:

Errors of substantive law contained in the language of an instruction require reversal if the error is prejudicial. *Bigley v. Craven,* 769 P.2d 892, 895 (Wyo.1989) (quoting *Cervelli v. Graves,* 661 P.2d 1032, 1036 (Wyo.1983)). In reviewing the content of a challenged jury instruction, the charge is considered as a whole. *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.,* 843 P.2d 1178, 1182 (Wyo.1992). To measure the degree of prejudice, jury instructions are viewed in the light of the entire trial, including the allegations of the complaint, conflict in the evidence on critical issues and the arguments of counsel. *City of Cheyenne v. Simpson,* 787 P.2d 580, 581–82 (Wyo.1990) (quoting *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.,* 743 P.2d 880, 886 (Wyo.1987)). The goal of our review is to determine if the charge presents a comprehensive, balanced and fundamentally accurate statement of the governing law to the jury. *Kemper Architects, P.C.,* 843 P.2d at 1182; *Sims v. General Motors Corp.,* 751 P.2d 357, 365 (Wyo.1988) (quoting *Norman v. State,* 747 P.2d 520, 523 (Wyo.1987)). The charge is deemed adequate if it is not likely to confuse or mislead the jury. *Bigley,* 769 P.2d at 895. "The fact that an instruction may have been more precisely drafted or drafted in a way more favorable to a party does

not warrant reversal for a new trial." *Triton Coal Co., Inc.* [*v. Mobil Coal Prod., Inc.,*] 800 P.2d [505,] at 512 [ (Wyo.1990) ]. *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 832 (Wyo.1994). *See also Frost v. Allred,* 2006 WY 155, ¶ 6, 148 P.3d 17, 19 (Wyo.2006).

[¶ 8] A trial judge retains extensive discretion in tailoring jury instructions, provided that they correctly state the law and fairly and adequately cover the issues presented. *See Hannifan,* ¶ 23, 185 P.3d at 689 (a trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case); *Three Way, Inc.,* ¶ 23, 177 P.3d at 227; *McGuire v. Solis,* 2005 WY 129, ¶ 23, 120 P.3d 1020, 1026 (Wyo.2005). We therefore review the district court's decision to give or its refusal to give a particular jury instruction for abuse of discretion.

### Propriety of challenged instruction

[¶ 9] The jury instruction complained of by the Piñas on appeal states:

Wyoming Statute § 1–12–601 provides, in relevant part, that:

(a) In an action for injury alleging negligence by a health care provider the plaintiff shall have the burden of proving:

(i) If the defendant is certified by a national certification board or association, that the defendant failed to act in accordance with the standard of care adhered to by that national board or association.

Defendant Charles Christensen, M.D. is certified by the American Board of Urology. Before you may find that he was negligent in his care and treatment of Plaintiff Theresa Piña, you must first find, by a preponderance of the evidence, that he failed to act in accordance with the standard of care adhered to by the American Board of Urology.

In their objection to this instruction, the Piñas focus on the statutory term "adhered to" and claim the term requires proof of written, clear-cut standards of care adopted by the American Board of Urology. While

no directly supporting evidence was adduced at trial, the Piñas allege on appeal the Board does not have any such written standards. The Piñas thus argue the instruction is erroneous because it required them to submit proof on something that doesn't exist.

[¶ 10] The first question is whether the jury instruction correctly states the law. The statute is obviously a correct statement of law. It reflects the legislative directive that a medical specialist should be held to national standards of care and treatment appropriate to the specialty. Since a doctor may hold himself out as a specialist only after certification by a national board on the basis of experience, training and national oral and written examinations, his patients should have a right to expect that his performance will meet national standards.

[¶ 11] As for the Piñas' argument, nothing in the statutory language suggests a national board must adhere to written, clear-cut standards of care. If so, then no doctor could be found to have committed malpractice if certified by a national board that has no written, published standards. We will not construe a statute as to have an absurd result. *Decker v. State ex rel. Wyoming Medical Comm'n*, 2008 WY 100, ¶ 16, 191 P.3d 105, 118 (Wyo.2008). Section 1–12–601 is clearly not intended to immunize board certified doctors from all liability.

[¶ 12] Even if there was any doubt as to the meaning of this particular jury instruction, it must be remembered that instructions are not to be extracted individually to establish error. When viewed in light of the jury instructions as a whole, we do not believe the jury could be confused on the issue of the standard of care. The jury was instructed that: "A doctor has the duty to exercise the skill, diligence, and knowledge utilized by members of the profession in good standing and in the same line of practice, and to apply means and methods which would reasonably be exercised and applied under similar circumstances." The jury was also instructed:

It is the duty of a physician or surgeon who holds himself out as a "specialist" in a particular field of medical, surgical, or other healing science, to have the knowledge and skill ordinarily possessed, and to use the care and skill ordinarily used, by reputable specialists practicing in the same field and under similar circumstances. One who holds himself out as a specialist in that field and who undertakes diagnosis and treatment in such specialty is required to use the skill and care required of such a specialist.

and

When the word "negligence" is used in these instructions as it applies to ... Dr. Christensen, it means the failure to exercise the skill, diligence, and knowledge, and to apply the means and methods that would reasonably be exercised and applied under similar circumstances by members of their profession in good standing and in the same line of practice. This you must decide based upon expert testimony.

These instructions effectively neutralized any ambiguity that may have lurked in the instruction incorporating the statutory language. We find the jury instructions as a whole present a correct statement of law and are not misleading.

[¶ 13] The Piñas earnestly argue that, under the facts of this case, the one instruction under review was devastating because Dr. Christensen isolated and exploited the instruction in his closing argument. In closing, after quoting the instruction, Dr. Christensen's counsel stated to the jury: "So have the plaintiffs established what it is, the standard of care is, as adhered to by the American Board of Urology? Ask yourself that question. I would submit that they have failed utterly to meet that burden of proof." Because the American Board of Urology does not have written standards of care, the Piñas argue this one instruction, and this three sentence argument made based on this instruction, destroyed their case.

[¶ 14] We admit to being disturbed by the manner in which the instruction was emphasized and used in closing argument by Dr. Christensen's counsel. Under the facts and circumstances of this case, however, we do not believe the Piñas to be prejudiced. At least two testifying board certified urologists agreed the standard was that of other board certified urologists under similar circum-

stances. Questions asked of expert witnesses were phrased to elicit specifically the standard of care of a board certified doctor. The majority of Dr. Christensen's counsel's closing argument regarding the standard of care dealt with a recitation of the testimony of the experts. Finally, there was more than sufficient evidence to support the jury verdict. Given the evidence at trial and the jury instructions as a whole, we do not believe the jury was confused as to the applicable standard of care.

[¶ 15] For future reference, however, we believe the statutory language is not necessarily appropriate for a jury instruction. The statutory language is really an abstract proposition of law, and is not made to apply directly to a case on trial. The district court felt compelled to give the instruction because it contained the statutory language. However, as already mentioned, a court always has discretion on the language and content of the jury instructions submitted. It is not obligated to give an instruction offered by a party if the jury is adequately instructed on the law as it pertains to that case. *Hannifan*, ¶ 23, 185 P.3d at 689; *Three Way, Inc.*, ¶ 23, 177 P.3d at 227; *McGuire*, ¶ 23, 120 P.3d at 1026.

[¶ 16] In this case, there were several instructions defining the standard of care to which Dr. Christensen was required to adhere. The essence of the meaning of the statute was fully embodied in these other instructions given by the court. The instruction based on the statutory language was superfluous. Further, its use opened the door for Dr. Christensen's counsel to highlight the potentially troublesome language of the statute in closing argument. On the whole, we believe a jury instruction quoting § 1–12–601 does not provide the same clarity as the other instructions given in the instant case, which are based on Wyoming Civil Pattern Jury Instructions 14.02 and 14.03. We therefore advise against the use of such an instruction.

## CONCLUSION

[¶ 17] Under the specific facts of this case, the district court did not err in giving the objected to jury instruction. The use of the instruction, however, is disfavored. The jury verdict is affirmed.